IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>JOHN STEWART DAVIS,<br><br>Defendant/Movant. | Cause No. CR 15-027-M-DLC<br>CV 17-126-M-DLC<br><br><br>ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE OF<br>APPEALABILITY |

This case comes before the Court on Defendant/Movant Davis's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Davis is a federal prisoner proceeding pro se.

On February 13, 2018, the United States was required to file all written proposed plea agreements and other writings, such as e-mails, evidencing proposed terms. The United States complied on February 22, 2018. Davis was given an opportunity to respond. On March 16, 2018, he stated that he received the proposed agreements in the course of the underlying criminal case. *See* Resp. to Order (Doc. 64) at 1 ¶¶ 1-2.

### I. Preliminary Review

Before the United States is required to file an answer, the Court must determine whether "the motion and the files and records of the case conclusively

1

show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But "it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

A grand jury indicted Davis on one count of dealing in firearms without a license, a violation of 18 U.S.C. § 922(a)(1)(A) (Count 1); three counts of unlawfully transferring firearms out of state, a violation of 18 U.S.C. § 922(a)(5) (Counts 2, 3, and 4); one count of possessing firearms with obliterated serial numbers, a violation of 18 U.S.C. § 922(k) (Count 5); four counts of possessing, manufacturing, or transferring unregistered firearms, a violation of 26 U.S.C. §§ 5861(a), (d), and (e) (Counts 6, 7, 8, and 10); and one count of possessing and transferring a machine gun, a violation of 18 U.S.C. § 922(o) (Count 9). There was also a forfeiture allegation. *See* Indictment (Doc. 1) at 2-8.

2

Davis moved to change his plea to guilty on Counts 1, 8, and 10. Although there was no written plea agreement, the United States agreed to dismiss the other counts at sentencing. Davis pled guilty in open court on June 20, 2016.

The sentencing hearing began at 10:30 a.m. Davis contested forfeiture of some firearms. A few hours' recess was called so that either the parties could reach an agreement or witnesses could be brought in to testify at a forfeiture hearing. During the recess, the parties agreed that 62 Remington rifles would be returned to Davis's brothers and 81 other firearms would be judicially forfeited. Two hundred seventeen firearms were identified as having been administratively forfeited by the ATF. *See* Stipulation (Doc. 36); Unopposed Mot. for Forfeiture (Doc. 41); Order (Doc. 44). Fifty-four of the firearms, including 44 that were consigned to Davis for sale, were returned to innocent owners. *See* Sentencing Tr. (Doc. 49) at 7:7-11.

Davis's advisory guideline range was 97 to 121 months. *See id.* at 23:22-26:15. The Court rejected defense counsel's requests for departures under the guidelines but varied downward under 18 U.S.C. § 3553(a). *See id.* at 40:20-41:12. Davis was sentenced to serve 48 months in prison, to be followed by three years' supervised release. *See id.* at 50:2-10; Judgment (Doc. 45) at 2-3.

Davis did not appeal. His conviction became final on October 28, 2016. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion

3

on September 6, 2017. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

### III. Claims and Analysis

Davis alleges that many errors occurred and that counsel was ineffective for committing them or failing to avoid or mitigate them. His claims are reorganized here, but all are addressed.

Claims of ineffective assistance of counsel generally are governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Davis must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

### A. Voluntary Character of Davis's Guilty Plea

Many of Davis's claims "attack the voluntary and intelligent character of the guilty plea," *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), by identifying various instances in which counsel's assistance was ineffective. The Court notes that none of Davis's claims asserts a legal reason to believe he had "a right not to be haled into court at all." *See Class v. United States*, __ U.S. __, 138 S. Ct. 798, 803 (2018) (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)).

### 1. Defense Proffers and Bargaining

Davis claims counsel was ineffective because he conceded Davis's guilt early on. Not yet aware that the grand jury had returned an indictment, counsel wrote a letter to the prosecutor in October 2015, suggesting the parties agree to defer prosecution. *See* Br. in Supp. of § 2255 Mot. (Doc. 54) at 12-13 (referring to Def. Sentencing Mem. Ex. A (Doc. 33-1) at 2-3, *cited in* Br. in Supp. at 12). Counsel's letter was an offer to compromise. Such offers are common, reasonable, and not prejudicial. They are not admissible to establish a client's guilt. *See* Fed. R. Evid. 408(a), 410(a)(4).

Neither prong of the *Strickland* test is met. This claim is denied.

### 2. Sufficiency of the Indictment

Davis claims the indictment was defective in two respects.

#### a. 22 Firearms

Davis claims that the indictment charged "violations of Federal law with respect to 22 firearms (alleged in the indictment)." Br. in Supp. (Doc. 54) at 11. He infers that only those firearms could be forfeited.

The indictment fairly notified Davis the United States would seek criminal forfeiture. The indictment was not required to specify the property to be forfeited. *See* Fed. R. Crim. P. 32.2(a).

Although further specificity was not required, the grand jury attached to the

5

indictment a list of 349 firearms. *See* Indictment (Doc. 1) at 9-22. By its terms, the indictment sought forfeiture of "any firearms and ammunition involved in the commission of the offenses in this indictment, including, but not limited to, the firearms listed in the criminal counts of this Indictment and the firearms and ammunition in the attached list seized from the defendant on July 28, 2015." Indictment (Doc. 1) at 7 ¶ 2 (internal formatting omitted and punctuation altered). Most of the seized firearms were administratively forfeited. Others were judicially forfeited by order issued on an unopposed motion at the time of sentencing. Any claim that the indictment deprived Davis of notice or an opportunity to contest forfeiture is meritless. This claim is denied.

### b. Overbreadth

Davis also claims the indictment was "ridiculously overbroad and impossible to defend" because Count 1 alleged he dealt in firearms without a license to do so "on or about and before 2014 and continuing until the end of July 2015" in three counties in Montana "and elsewhere." *See* Br. in Supp. at 10. Davis also objects that the United States did not specify "which firearms" it was "accusing Davis of dealing without a license." *Id.* at 10-11.

"When read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied," an indictment must include "adequate factual detail" to allow a defendant to prepare a defense. *See*

*United States v. Livingston*, 725 F.3d 1141, 1148 (9th Cir. 2013) (quoting, in part, *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985)) (internal quotation marks omitted).

The indictment was not required to allege any specific county, *see* Fed. R. Crim. P. 7; *United States v. Mendoza*, 108 F.3d 1155, 1156 (9th Cir. 1997); *Carbo v. United States*, 314 F.2d 718, 733 (9th Cir. 1963), so identification of three counties contributed to the factual detail of the charge. The opening date of the time frame was vague, but time was not an element of the crime, so lack of specificity regarding a beginning date did not omit an element. *See United States v. Laykin*, 886 F.2d 1534, 1543 (9th Cir. 1989). The grand jury found probable cause to believe Davis dealt in 349 firearms, each of which was individually identified. Davis could defend the case by, for example, showing he had a license or showing that he was not engaged in the business of buying or selling the firearms in Attachment A. Davis does not suggest he had a license to deal in some of the firearms but not others. Count 1 provided "adequate factual detail" to allow Davis to defend himself.

### c. Conclusion

The indictment was not fatally defective, so the fact counsel did not challenge it does not mean counsel's performance was unreasonable. Davis also cannot show prejudice. This claim is denied.

### 3. Suppression Motion

Davis states that he "has never possessed" the search warrant, application, or return. He believes the ATF must have exceeded the bounds of the warrant, or the warrant must have been overbroad, because officers seized "computers, papers, cellphones, [and] cash" in addition to firearms. He further believes counsel must not have even looked at the warrant application or return. *See* Mot. to Compel at 1-2 ¶ 3; Br. in Supp. at 6-10.

The warrant was issued by this Court. *See In the Matter of 365 Seville Lane*, No. MCR 15-42-M-JCL (D. Mont. filed July 23, 2015). ATF Agent Sutton's affidavit showed that officers were looking for evidence of Davis's unlawful business activities as well as evidence identifying customers who purchased illegal weapons. For that reason, the application requested authority to seize "[p]ersonal telephone and address books and listings, letters, electronic mail messages," among other things. The warrant included that authorization. *See* Warrant Aff. (Doc. 1-1) at 32 ¶ 8 ("Attachment A"); Search Warrant (Doc. 2) at 1. The warrant return listed Davis's cell phone and "[a]pproximately 354 firearms," among other things, in the items seized. The number of firearms was approximated, but the firearms were listed. *See* Warrant Return (Doc. 6-1) at 4.

There is no reason to suppose counsel was ineffective. This claim is denied.

### 4. Counsel's Promises as to Sentence and Return of Firearms

Davis claims he "was promised a non-custodial sentence by Counsel" and "was promised a hearing on returning 200+ firearms; at the plea stages." Br. in Supp. at 2. He further claims counsel "constantly and repeatedly" advised him that he "would not lose his firearms . . . and would not spend any time in jail." *Id.* at 15; *see also* Resp. to Order (Doc. 64) at 1-2 ¶¶ 3-5. Davis avers he would not have pled guilty if he had known he would receive a prison sentence and forfeit all his firearms. He also asserts "a jury of my peers would have likely found me innocent." *See* Davis Aff. (Doc. 53-1) at 1.

Davis's allegation that a jury would have acquitted him is not persuasive. He offers no new evidence or previously unknown factor that would prompt either him or his counsel to re-evaluate a jury's likely decision on all three counts of conviction. Two judges of this Court agreed that Davis's guilty pleas were supported by a factual basis. *See* Fed. R. Crim. P. 11(b)(3); Findings and Recommendation (Doc. 30) at 2 ¶ 4; Order (Doc. 31) at 1-2. The United States had compelling evidence against Davis. *See* Offer of Proof (Doc. 24) at 8-23 ¶¶ 1-27.

Davis's contention that counsel "constantly and repeatedly" said he would receive both probation and the firearms (or proceeds of their sale) does not support an inference either that counsel's performance was unreasonable or that other competent counsel would, to a reasonable probability, have obtained any result more to Davis's liking. Neither Davis nor counsel had the power to control the

consequences Davis would face, and Davis was not entitled to know, before he decided whether to plead guilty or go to trial, exactly what his sentence would be.

Moreover, Davis himself clarifies that counsel did not promise anything. He says counsel told him "*there are no guarantees in this business*, but his expertise told him there would be no prison time and he'd *request* a preliminary hearing to get the firearms returned." Br. in Supp. at 15 (emphases added); *see also* Fed. R. Crim. P. 32.2(b). This is not a promise of a particular outcome. The examples Davis cites to show counsel's "promises," *see* Br. in Supp. at 15-20; Resp. to Order (Doc. 64) at 1-2 ¶¶ 4-7; U.S. Resp. to Order (Doc. 61-3) at 1-18 (under seal), show counsel advocating for Davis.

Finally, counsel's "expertise" did not lead to an unreasonable prediction or a "gross mischaracterization" of the likely sentence. *See Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986). Davis had a compelling personal history. *See, e.g.*, Sentencing Mem. at 6-8; Statement of Reasons (Doc. 46) at 3 ¶ VI(C) ("history and characteristics"); *see also* Br. in Supp. at 35, 37. He was eligible by statute for a sentence of probation. *See* Presentence Report ¶¶ 90-92. Davis could receive proceeds from firearms he lawfully possessed and was compelled to give up as a result of his conviction. *See Henderson v. United States*, __ U.S. )), 135 S. Ct. 1780, 1786-87 (2015). Any competent lawyer could have believed and advised Davis that both probation and sale of at least some of the firearms were reasonable

10

possibilities.

Davis may have pled guilty in the belief that, in the end, he would not go to prison and would be able to keep the proceeds from sale of at least some of the firearms. But his allegations do not support an inference that counsel's advice was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision" about his choice between pleading guilty and going to trial. *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002). This claim is denied.

### 5. *Lafler/Fry* Claim

Davis initially claimed he "ha[d] never seen any" of the plea agreements proposed by the United States. He has now received all of them and concedes that he saw them all before he pled guilty. *See* Resp. to Order (Doc. 64) at 1 ¶¶ 1-2.

As to one written proposed agreement (*see* Doc. 54-1 at 2-13), Davis objects that "there was hardly an 'agreement'" because "the AUSA simply took it upon herself to draft an absolute one-sided dictatorial" proposal "with no input or negotiation from Davis nor his counsel." Br. in Supp. at 14. Someone must draft the document. The United States is usually the party that does it. That practice protects the defendant, because ambiguities are construed against the drafter. If the defendant does not like the offered terms, he rejects the proposed agreement, as Davis did here. Davis's objection does not make sense.

This claim is denied.

### 6. Davis's Ability to Hear and Understand at the Plea Colloquy

Davis alleges that he was unable to understand what he was doing when he pled guilty because he could not hear. *See* Davis Aff. (Doc. 53-1) at 1; Br. in Supp. at 22-24. The transcript of the plea colloquy demonstrates the opposite. At the beginning of the change of plea hearing, Davis said he could hear. *See* Change of Plea Tr. (Doc. 48) at 3:15-16. Occasionally, he said he could not hear, and the magistrate judge repeated the question. Occasionally, the magistrate judge also could not hear, and Davis repeated his answer. *See, e.g., id.* at 13:20-14:12. When Davis said he did not follow the United States' long recitation of its offer of proof, the magistrate judge went through it, point by point. *See id.* at 37:8-44:11. Davis did not say he was unable to hear.

In every instance, Davis responded appropriately to all the questions asked of him. His claim that he could not hear is contradicted by the record. This claim is denied.

### 7. Count 10

Count 10 charged Davis with possessing three unregistered firearms. Davis now claims he did not knowingly possess the third, a street sweeper. *See* Change of Plea Tr. at 42:23-43:13. He admits he knew he took possession of a box containing "numerous firearms," and he "trust[ed] the boxes contained nothing illegal." Br. in Supp. at 25.

Even assuming his liability on Count 10 was ambiguous, Davis does not contest his liability for Counts 1 and 8, and he states that counsel told him "he had to admit to having [the street sweeper] or the whole deal would be blown." Br. in Supp. at 25. In other words, even if Davis thought a jury might acquit him on Count 10, he pled guilty to the charge for the sake of avoiding trial on the other charges. A decision of that character is not unreasonable.

At sentencing, Davis received a two-point enhancement for the street sweeper, *see* Presentence Report ¶ 27, but his knowing possession had to be proved only by a preponderance of the evidence. Davis does not allege facts supporting an inference that the United States was unable to support the enhancement.

Neither prong of the *Strickland* test is met. This claim is denied.

### 8. Plea Colloquy

Davis reads deep meanings into the plea colloquy. What the lawyers and the magistrate judge said is more sensibly read as what they meant.

The magistrate judge's principal concern at the plea colloquy was not forfeiture but the fact the United States did not make a binding promise to dismiss Counts 2 through 7 and 9; thus, even after pleading guilty to three counts, Davis still could have been tried, convicted, and sentenced on the others as well. This concern did not constitute involvement in plea negotiations, because the judge was ensuring the plea was voluntary and not induced by a promise that would prove

13

unenforceable. *See* Br. in Supp. at 17; Fed. R. Crim. P. 11(b)(2); *see also* D. Mont. L.R. 83.4(a), CR 1.1 (requiring such promises to be in writing). Although the judge was concerned about the admissibility of Davis's statements if trial were held on Counts 2 through 7 and 9, Davis was protected by Fed. R. Evid. 410(a).[1] All concern was put to rest when the United States dismissed Counts 2 through 7 and 9 at sentencing, as it had said it would. *See* Sentencing Tr. (Doc. 49) at 52:13-17. Davis cannot make any complaint on these points.

Counsel advised Davis to plead guilty to Counts 1, 8, and 10 without a plea agreement because he did not want to accept the United States' terms. Those terms included the United States' promise to recommend a sentence of 48 months unless it believed his client did not provide "complete, truthful, forthright, material, important, valuable and meaningful information" or testimony if called. *See* Proposed Plea Agreement (Doc. 54-1) at 4. A client could easily trip up on one or more of those adjectives, and any client might not want to debrief or testify. If the United States did not recommend 48 months, the agreement expressly contemplated a "likely" guideline range of 168 to 210 months,[2] and the terms also

---

[1] However, because there was no plea agreement, *see* 18 U.S.C. § 3161(h)(1)(G), the speedy trial clock continued ticking on the outstanding counts until they were dismissed.

[2] Perhaps the United States believed this would be the advisory guideline range if Davis failed to obtain the three-level reduction for acceptance of responsibility and also received a two-point upward adjustment for obstruction of justice. *See* U.S.S.G. § 3C1.1 & Application Note 4(G) (Nov. 1, 2015). Or perhaps U.S.S.G. § 2K2.1(b)(4)(B) was overlooked. At any rate, defense counsel certainly did not perform unreasonably by declining to acknowledge a range of 168 to 210 months was "likely."

required Davis to waive his right to appeal the sentence. *See* Change of Plea Tr. (Doc. 48) at 9:2-16; Proposed Plea Agreement (Doc. 54-1) at 3 ¶ 3 (Rule 11(c)(1)(C) provision), 8-9 ¶ 6, 9-10 ¶ 10(a).

Contrary to Davis's allegation, counsel did not ask to speak to the judge without his client being present; he asked to speak off the record. Counsel did not insinuate the United States "will request" a substantial assistance motion; he said he believed he had the same chance of a below-guidelines sentence without the proposed plea agreement as he had with it. *See* Br. in Supp. at 19, 20. The magistrate judge was not speaking of Davis when he said, "I don't know what he's going to do, because I'm sure he anticipated a plea agreement here." *See* Br. in Supp. at 26; Change of Plea Tr. at 46:2-3. He was speaking of this Court, which would have had the responsibility for trying Davis on the still-pending counts had the United States failed to dismiss them. *See id.* at 45:20-46:20; 18 U.S.C. § 3161(a).

Davis speculates that the Court knew the parties had agreed on 48 months and so imposed that sentence. *See id.* at 20-21. The sentence was 48 months "due to Defendant's age, physical condition, military service, lack of a criminal history or substance abuse history, and family circumstances." Statement of Reasons (Doc. 46) at 4 ¶ VIII.

As for Davis's loss of his firearms, conviction on any count made Davis a

felon unable to possess firearms. Therefore, it is extremely unlikely his lawyer promised he would get the guns back. But, even assuming counsel promised that, there is no reasonable probability Davis would have gone to trial if he had known he would not get the guns back. *See Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985). Davis does not identify a viable reason to believe he might have been acquitted on *all* counts, and conviction on *any* count would make Davis a felon unable to possess firearms. Davis now claims the plea agreement would have resulted in forfeiture of only 22 firearms. *See* Br. in Supp. at 20, 21. The document does not say that. Davis says he "firmly believes his firearms ended up in the lawyers' hands." Br. in Supp. at 26. The Court has no knowledge of where the firearms "ended up," but the only significant point of law is that they were forfeited with all the process that was due.

It was reasonable for counsel to advise Davis to plead guilty to Counts 1, 8, and 10 without a written plea agreement. Davis suffered no prejudice from that advice. There is no reason to think firearms would have been returned to Davis. Neither prong of the *Strickland* test is met. All claims regarding statements made at the plea colloquy are denied.

### 9. Conclusion

Davis's allegations are not sufficient to support an inference that his guilty plea might have been entered involuntarily.

### B. Claims Arising at or Related to Sentencing Phase

#### 1. Sentence of Probation

Davis asserts that he should have been sentenced to probation. A § 2255 motion is not a resentencing hearing. At any rate, Davis claims that if he "did not qualify" for a sentence of probation, home confinement, or a combination of both, then "nobody ever will" and "it is an impossibility for such a sentence to be handed down by the courts." Br. in Supp. at 35, 37.

This Court and other judges in this District have sentenced defendants to probation, home confinement, or a combination of both. For the reasons explained at length at Davis's sentencing hearing, *see* Sentencing Tr. at 39:20-48:19, a prison term was warranted.

Davis's related claim that counsel was ineffective because he failed to obtain a sentence of probation meets neither prong of the *Strickland* test. Davis does not identify any factor that was not considered under 18 U.S.C. § 3553(a). There is no reasonable probability a different sentence would have been imposed if only someone else had represented Davis.

This claim is denied.

#### 2. Condition of Supervised Release

Davis contends that a special condition of supervised release prohibiting him from incurring new lines of credit without the knowledge and approval of his

probation officer is unconstitutional because it is unrelated to the offense of conviction. *See* Mot. § 2255 (Doc. 53) at 5. But there is a relationship. Davis made a living for twenty years by selling firearms without a license, by not keeping required records, and by occasionally obliterating serial numbers or modifying firearms to be fully automatic to enhance their marketability. *See* Presentence Report ¶¶ 8-27; Sentencing Tr. (Doc. 49) at 33:2-20. Financial transparency is a reasonable condition of his supervised release because it is reasonably related to protection of the public and rehabilitation of the offender. *See, e.g.*, 18 U.S.C. § 3583(d); *United States v. Bare*, 806 F.3d 1011, 1017 (9th Cir. 2015). This claim is denied.

### 3. Forfeiture

#### a. Counsel's Advice re: Forfeiture

Davis claims both that counsel told him he "would have his firearms returned to him if he would plead guilty," Br. in Supp. at 5, and that "there would be a hearing on the return of all of the firearms," *id.* at 6. He also states that counsel said "the government and law enforcement could only ask for contraband, or, in other words, property used or gained from the offense of conviction." *Id.* at 9. Counsel's advice that Davis was entitled to a hearing and that firearms connected to the offense were likely to be forfeited was correct. So was the statement that Davis's own personal firearms, if unrelated to the crimes alleged in

18

the indictment, would be returned to him if he pled guilty to a misdemeanor or sold with proceeds allocated to him if he pled guilty to a felony. These allegations, therefore, do not show either that counsel's performance was unreasonable or that Davis was prejudiced as a result.

### b. Administrative Forfeiture

Davis also argues that the indictment referred only to criminal forfeiture, not administrative forfeiture. *See* Br. in Supp. at 9-11. That is true. But it does not undermine the validity of Davis's conviction or sentence or of any forfeiture.

"Nonjudicial (or administrative) forfeiture is one of three modes of forfeiture established by federal law, the other two being judicial forfeitures brought as civil *in rem* proceedings and criminal forfeitures." *Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 182 n.4 (3d Cir. 2016) (en banc) (citation omitted). "[A]fter providing sufficient notice, an authorized agency may, in the absence of a claimant willing to contest the action, issue a 'declaration of forfeiture ... [with] the same force and effect as a final decree ... in a judicial forfeiture proceeding.'" *Id.* (quoting 19 U.S.C. § 1609(b)). The ATF is authorized to effect administrative forfeitures. *See generally* 18 U.S.C. §§ 983, 3051; 28 C.F.R. § 0.130(b).

There is no reason to believe the ATF's forfeiture was invalid. The administrative proceeding began on September 18, 2015, within 60 days of the firearms' seizure. Davis received notice of it by certified mail. He did not assert

19

an interest in the noticed firearms by filing a claim or a right to return of the property in a petition. Therefore, the ATF was not required to consider his interest in its forfeiture proceedings. *See* Am. Br. in Supp. of Unopposed Mot. (Doc. 41) at 2-3 ¶¶ 3-4; 18 U.S.C. § 983(a)(1)(A)(i); Decl. of Admin. Forfeiture (Doc. 41-1) at 1-7; Forfeiture Timeline (Doc. 34-2) at 1-2. The fact that an indictment was later returned did not require the United States to abandon administrative forfeiture in favor of criminal forfeiture. *See, e.g.*, 18 U.S.C. § 983(a)(3)(C) (allowing civil complaint and criminal forfeiture to proceed together). Given all the statements Davis made to undercover agents from December 2014 to June 2015 and in his interview, *see* Presentence Report ¶¶ 10-22, there is no reason to think the ATF could not connect the noticed firearms to Davis's unlicensed dealing.

### c. Confusion over Forfeiture at Sentencing Hearing

As for the confusion about forfeiture that occurred at sentencing, Davis's allegations do not support an inference that he was prejudiced. The sentencing hearing began at 10:30 a.m. on October 13, 2016. Davis's counsel did not agree that all the firearms listed in the ATF's Declaration of Forfeiture, dated October 6, 2016 (Doc. 41-1) at 2-7, were forfeited. The Court called a recess at 10:47 a.m., stating that either the parties would agree to a final forfeiture order "or we're going to have a forfeiture hearing" and "get to the bottom of this." *See* Sentencing Tr. (Doc. 49) at 8:10-17, 9:11-18, 10:16-11:22; *see also* Fed. R. Crim. P.

32.2(b)(1)(B), (2)(B).

At 12:46 p.m., the prosecutor filed a stipulation, signed by herself and
Davis's counsel, agreeing that the rifles listed in Attachment A would be returned
to Davis's brothers and the firearms listed in Attachment B would be forfeited. *See*
Stipulation (Docs. 36, 36-1, 36-2). Those attachments were still not correct and
had to be amended. *Compare* U.S. Forfeiture Br. (Doc. 38) at 3 ¶¶ 4-6 *with* Am.
U.S. Forfeiture Br. (Doc. 41) at 3-4 ¶ 6. It is true that Davis's brothers knew only
at the sentencing hearing that they would in fact receive some of the firearms, *see*
Doc. 54-1 at 23-24, but Davis's inference of malfeasance is unwarranted. Davis's
claim that he was unfairly surprised at sentencing, *see* Br. in Supp. at 27-32, is not
credible. He was present when the Court said either the parties would agree as to
what was forfeited or there would be a hearing, and he was present when the Court
said the parties had agreed and the issue was resolved.

If Davis did not authorize counsel to agree to forfeiture, *see* Br. in Supp. at
34, that has no effect on the forfeiture's validity. Further, forfeiting the firearms
involved in the crimes of conviction could not be disproportionate to the gravity of
the offense.

Davis is correct that the final order of forfeiture relied on the wrong statute,
18 U.S.C. § 2253. He is not correct that he "was never given notice and his due
process rights were violated." *See* Br. in Supp. at 33. The Court had jurisdiction

21

to effect the forfeiture. *See* 18 U.S.C. §§ 3231, 924(d); 26 U.S.C. § 5872(a); 28 U.S.C. § 2461(c); *see also* Indictment (Doc. 1) at 2 (caption), 7.

All claims relating to forfeiture are denied.

### D. Failure to File Notice of Appeal

Finally, Davis alleges that he instructed counsel to file a notice of appeal but counsel refused to do so. *See* Br. in Supp. (Doc. 54) at 1. He alleges that he "is under no obligation to submit facts sufficient for reversal on appeal in order to succeed on this ground" under 28 U.S.C. § 2255. *Id.* at 2.

Where a defendant claims that counsel failed to consult about an appeal or flatly disobeyed a direct instruction to appeal, he is not required to demonstrate a non-frivolous claim that could have been raised on appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000).

But Davis does not allege that counsel failed to consult or disobeyed his instruction. On the contrary, he states that counsel responded to his instruction by explaining that an appeal would be costly, presented little chance of success, and posed the possibility of a longer term in prison as an eventual result. *See* Br. in Supp. at 1; Mot. Ex. D (Doc. 54-1 at 25) (email from Terri Davis). This is the consultation *Roe* envisions, not forfeiture of the right to appeal. The claim is not governed by *Roe*. It must meet the ordinary standards of *Strickland*.

Davis identifies no basis for believing counsel's advice was unreasonable.

He identifies two claims he would have raised on appeal, *see* Br. in Supp. at 2, but they are claims of ineffective assistance of counsel, predicated on what counsel said to Davis. Counsel's advice to Davis about his plea was not a matter of record and so could not have been raised on appeal. *See, e.g., Massaro v. United States*, 538 U.S. 500, 504-05 (2003). Davis does not identify any other basis for appeal or any reason to suppose an appeal would have resulted in a more favorable disposition.

Neither prong of the *Strickland* test is met. This claim is denied.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Davis's claims meets even the relatively low threshold required for a COA. Davis believes counsel should have obtained a more favorable plea

bargain, but he does not identify anything counsel missed or failed to do that would, to a reasonable probability, have led to a more favorable outcome. Given the highly incriminating statements Davis made to undercover agents, there was no reasonable prospect of acquittal on all charges at trial. Davis pled guilty to only three counts because counsel persuaded the United States to dismiss others. Because Davis was virtually certain to be convicted at trial of at least one felony, and because many of the firearms seized from him were connected with his business dealings (for example, they had price tags attached to them), he had no reasonable prospect of obtaining the proceeds of all the firearms seized from him. And, ultimately, counsel obtained an extensive downward variance from the advisory guideline range from 97 to 121 months to a sentence of 48 months. Under the circumstances, counsel did the best he could have been expected to do.

There is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED:

1. Davis's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 53, 53-1, 53-2, 54, 56, 57, 64) is DENIED. The motion for a ruling (Doc. 59) is MOOT.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Davis files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 17-126-M-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Davis.

DATED this __27th__ day of April, 2018.

Dana L. Christensen, Chief Judge
United States District Court